UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KARTIK PATEL,                           )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       No. 1:24-cv-00489-KMB-JRS
                                        )
CORY AHLERSMEYER,                       )
TIFFANY JO MASTIN,                      )
                                        )
                Defendants.             )

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Kartik Patel, an Indianapolis hotel owner, brought this action against Defendants

Officer Cory Ahlersmeyer and Detective Tiffany Jo Mastin of the Indianapolis Metropolitan Police

Department ("IMPD").  He asserts a malicious prosecution claim under 42 U.S.C. § 1983 against

both Defendants based on the non-renewal of one his hotel licenses.  Specifically, he argues that

both Defendants engineered criminal charges against him that were later dismissed, and that these

charges were used as a basis to deny renewal of one of his hotel licenses in violation of his due

process rights.

Presently pending before the Court is Defendants' Motion for Summary Judgment.  They

dispute Mr. Patel's version of events and argue that they are entitled to qualified immunity.  As set

forth below, because Mr. Patel fails to carry his burden of showing that the alleged violation of his

due process rights was clearly established, Defendants are entitled to qualified immunity.

Defendants' Motion for Summary Judgment is therefore **GRANTED**.  [Dkt. 56.]

## I.  APPLICABLE STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact, and instead, the movant is entitled to judgment

1

as a matter of law.  *See* Fed. R. Civ. P 56(a).  On summary judgment, a party must show what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "Summary judgment is not a time to be coy."  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The trial court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h).  Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the court need only consider disputed facts

2

that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Factual disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.  RELEVANT BACKGROUND

The following factual background is set forth pursuant to the standard explained above.  The facts stated herein are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Patel because he is "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

Notably, the Parties argue at length regarding what the undisputed evidence and evidence taken in the light most favorable to Mr. Patel shows.  For example, they dispute whether Defendants made false statements.  Ultimately, the Court need not resolve these disputes, since Defendants are clearly entitled to qualified immunity.  Thus, the following background focuses on the evidence necessary to understand the factual background generally and the arguments regarding qualified immunity.

### A.      Mr. Patel's Hotels and Compliance with Indianapolis City Ordinances

The City of Indianapolis enacted an ordinance in 2018 regulating licensed hotels that allows the Indianapolis Department of Business and Neighborhood Services ("BNS") to place a hotel on probation if the hotel's calls for emergency service ratio exceeds 2.5 calls per room (the "calls for service ratio").  Ind. Rev. Ord. § 901-303(a).  Among other things, hotels on probation

must complete meetings with "police, fire, health, and zoning officials to discuss issues related to the property contributing to criminal activity and actions to mitigate them and limit their impact." Ind. Rev. Ord. § 901-303(b).

Mr. Patel owns three hotels in Indianapolis: the Regal 8, the Budget 8, and the Always Inn. [Dkt. 61-9 at 1.]  In January 2022, BNS placed Mr. Patel's Budget 8 hotel on probation for exceeding the calls for service ratio.  [Dkt. 61-9 at 1.]  Thereafter, Mr. Patel posted a sign at the front desk at each of his hotels stating that guests should let hotel staff call emergency services for them and that they could be fined $50 and asked to leave if they violated this policy.  [Dkt. 61-9 at 2.]  However, Mr. Patel attests that he "never actually evicted any guest at any of [his] hotels or charged someone $50 for making a 9-1-1 call," as the posted sign was "mainly to discourage frivolous calls."  [*Id.*]

**B.      Officer Ahlersmeyer's Dispatch to Regal 8 in Response to a 9-1-1 Call**

Defendant Officer Ahlersmeyer was at all relevant times a patrolman with IMPD.  [Dkt. 61-1 at 3.]  On July 22, 2022, he was dispatched to Mr. Patel's Regal 8 hotel to respond to a call regarding a person having a mental emotional crisis.  [*Id.* at 6.]  Officer Ahlersmeyer's police-issued body camera recorded the encounter.  [*See* dkts. 62; 63 (hereinafter, "Body Camera").]  When Officer Ahlersmeyer arrived, he spoke with the employee at the front desk, Janice Hopkins, because he was unsure where the individual in crisis was located.  [*Id.*]

While at the front desk, Officer Ahlersmeyer noticed the following sign:

If you need police assistance: Notify the office.
911 calls made from rooms may result in your being asked to leave (without a refund).
$50 penalty will apply.

[Body Camera at 4:33.]

4

Officer Ahlersmeyer eventually located the individual in distress, later identified as Mindy Andrews, sitting outside of the hotel. [Dkt. 56-1 at 23.] Ms. Andrews stated that she was having a mental emotional crisis and wanted to go to the hospital. [*Id.*]

While Officer Ahlersmeyer was waiting with Ms. Andrews for emergency medical services ("EMS") to arrive, Ms. Hopkins left the front desk and went outside to where they were waiting. [*Id.* at 26.] Ms. Hopkins engaged in a conversation with another guest near the scene and suggested that the guest "need[ed] to go." [*Id.*] Ms. Hopkins asked Ms. Andrews what room she was in, and Ms. Andrews told her the room number. [Body Camera at 17:00 – 17:12.] Officer Ahlersmeyer explained to Ms. Hopkins that Ms. Andrews wanted an ambulance and was not causing any problems. [*Id.*]

Officer Ahlersmeyer then engaged in the following conversation with Ms. Hopkins about the sign he saw posted at the front desk regarding 9-1-1 calls:

> Officer Ahlersmeyer: You realize it's illegal to kick people out for calling 9-1-1, right?
>
> Ms. Hopkins: We're not kicking them out. We, . . . his policy, is that they have to pay $50.
>
> Officer Ahlersmeyer: You realize that's also illegal, right?
>
> Ms. Hopkins: That's his policy. I don't know. All I know is that they, we're getting in trouble for her calling, instead of her calling us to call you. Because now we're getting closer to that point where you're going to close us down.
>
> Officer Ahlersmeyer: I understand that. But I already saw the sign that you guys have in the office. You guys can't do that. I already saw the line where it says if you call 9-1-1 you'll be asked to leave or asked to pay $50. You realize both of those things are illegal, right? If someone wants to call 9-1-1, they have the right to call 9-1-1.
>
> Ms. Hopkins: We have the right to kick them out too.
>
> Officer Ahlersmeyer: Not for a prior legal act. Prior lawful act [inaudible] calling 9-1-1.

5

Ms. Hopkins: That's something to take up with the owner. That's his policy.

Officer Ahlersmeyer: That's fine. I'll be reaching out to community relations. They'll have a conversation with him and explain the law to him. Either that or the prosecutor's office. One of the two.

[*Id.* at 18:03 – 19:02.] After EMS examined Ms. Andrews, she left to go to the hospital. [*Id.* at 25:13 – 26:40.]

Officer Ahlersmeyer went to his police car and called his supervisor to ask about the legality of the Regal 8's sign regarding 9-1-1 calls. [*Id.* at 30:30 – 33:54.] Following that conversation, Officer Ahlersmeyer informed another officer on the scene that the plan was to take a picture of the sign at the front desk and send it to the Lieutenant who oversees code enforcement. [*Id.* 35:00 – 35:10.]

Officer Ahlersmeyer returned to the front desk of the hotel to speak with Ms. Hopkins. He explained to her that Lieutenant Carter would be reaching out to "offer some clarification" on the legality of the sign. [*Id.* at 36:04.] Officer Ahlersmeyer stated that "no one in here is any trouble, nobody is getting charged with anything." [*Id.* at 36:20.]

Ms. Hopkins then called her boss, Mr. Patel, so that he could speak with Officer Ahlersmeyer. [*Id.* at 36:50.] Officer Ahlersmeyer made clear to Mr. Patel that individuals have the right to call 9-1-1 without repercussions from the hotel, and that discouraging them from doing so is "dancing a fine line" of violating the statute prohibiting interfering with calling 9-1-1. [*Id.* at 36:55.] Officer Ahlersmeyer noted that his supervisor gave him authority to make an arrest at that time, but that he was instead going to file an incident report. [*Id.* at 41:38 – 41:50.]

Consistent with his statements, Officer Ahlersmeyer emailed Lieutenant Carter on July 24, 2022, regarding his dispatch to the Regal 8 two days prior. [Dkt. 61-7 at 237.] Officer Ahlersmeyer provided his incident report and explained what occurred at the Regal 8. Among other things,

6

Officer Ahlersmeyer stated that "the front desk clerk came to the back of the building and attempted to kick out the guest that was having the issue." [*Id.*] Officer Ahlersmeyer further noted that, after speaking with Mr. Patel, it is "clear that they are attempting to conceal either 1) crimes occurring at the location, or 2) actively kicking people out after they do call 911." [*Id.*] He concluded the email by noting that he had "spoke with Sgt. Ragaska (CC'd) . . . and we're of the same mind that [t]his likely needs addressed." [*Id.*]

After filing the incident report, no one at BNS contacted Officer Ahlersmeyer regarding his report or the Regal 8. [Dkt. 56-1 at 55-56.] Similarly, Officer Ahlersmeyer never discussed Mr. Patel or the Regal 8 with the Marion County Prosecutor's Office ("MCPO"). [*Id.* at 54.]

**C.    IMPD and BNS Actions Regarding the Regal 8 After July 22, 2022**

Defendant Detective Mastin was a detective with IMPD's Nuisance Abatement Unit ("NAU"). [Dkt. 56-2 at 4.] The NAU deals with "quality of life issues" and works with other City agencies. [*Id.* at 6.] Specifically, the NAU collaborates with BNS regarding code enforcement, zoning, unsafe buildings, and licensing issues. [*Id.* at 16.] However, BNS is ultimately in charge of licensing, not IMPD's NAU. [*Id.*] When Detective Mastin has licensing-related questions, she would typically ask BNS's Charles Askew, who was a Licensing Manager. [*Id.* at 16-17; Dkt. 61-7 at 232.]

The NAU is part of the larger Nuisance Task Force, which is a partnership of multiple agencies that work with business owners. [Dkt. 61-2 at 5.] When hotels are placed on probation, the Nuisance Task Force meets with the hotel license owner to discuss the situation, including why the hotel has so many calls for emergency services. [*Id.* at 6.] BNS coordinates these meetings at its office, and they invite the relevant agencies to attend. [*Id.* at 8.]

7

Detective Mastin first met Mr. Patel at one such BNS meeting on August 9, 2022. [*Id.* at 7.] That meeting was about Mr. Patel's Budget 8 hotel that had been placed on probationary status due to it exceeding the calls for service ratio, not Mr. Patel's Regal 8 hotel that Officer Ahlersmeyer had responded to on July 22, 2022. [*Id.* at 7-8.]

During the meeting, BNS and the other City officials asked Mr. Patel for further cooperation and to take steps to improve security and decrease the need for emergency services to respond to the Budget 8 hotel. [*Id.* at 9.] Mr. Patel believed he was being treated unfairly, particularly in that his hotel was being placed on probation solely based on the number of calls to emergency services. [Dkt. 56-2 at 23.] Mr. Patel also disputed the way in which the calls for service ratio was calculated. He brought documents to the meeting showing that some of the calls were made by his employees, which should not be included in the calls for service ratio calculation. [*Id.* at 33.] Detective Mastin asked Mr. Patel if he was "gaming the system" by having his employees make emergency calls. [*Id.*]

By the end of the meeting, Detective Mastin thought "there was no forward movement . . . [and] there was some general frustration in the room." [*Id.* at 9-10.] That is when, according to Detective Mastin, Mr. Patel "was especially rude to [her], at one point [telling her] if [she] didn't want to do [her] job [she] should quit and let him do it." [Dkt. 61-7 at 223; dkt. 61-2 at 10.]

**D.       Detective Mastin Prepares a Probable Cause Affidavit Regarding Mr. Patel**

On August 22, 2022, Charles Askew emailed Lieutenant Carter and Detective Mastin about the Regal 8. [Dkt. 61-7 at 232.] Mr. Askew was the Licensing Manager at BNS. [*Id.*] Mr. Askew's email stated:

> []BNS has discussed the sign posted at the Regal 8 Inn that discourages guests from calling 911 and has come to understand that the owner is in violation of State Code IC 35-45-2-5 Interference with the reporting of a crime. Would this violation be an offense that IMPD would cite or generate a report for?

> If any action is to be taken on his license the location would need to be cited for a violation. Attached is the email of the events that occurred on 7/22/2022 when the responding Officer was questioned by the guest about the legality of the sign.

[Dkt. 61-7 at 232.]  Detective Mastin responded two minutes later, stating "I can file a PC for the misdemeanor."  [*Id.*]

Detective Mastin believed—based on the sign Officer Ahlersmeyer observed at the Regal 8 on July 22, 2022, her review of the body camera footage from that date, and Mr. Patel's explanation for his 9-1-1 policy during the August 9, 2022, meeting—that there was probable cause to charge Mr. Patel with Interference with the Reporting of a Crime.  [Dkt. 56-2 at 46-48.] Specifically, Detective Mastin thought Mr. Patel interfered with the Regal 8's guests' ability to report a crime.  [*Id.* at 48.]  Detective Mastin also believed there was probable cause to charge Mr. Patel with obstruction of justice.  [*Id.* at 45.]  However, the MCPO, not Detective Mastin or anyone in IMPD, makes final charging decisions.  [Dkt. 61-2 at 27.]

Detective Mastin submitted her Affidavit for Probable Cause to the MCPO for screening on September 26, 2022.  [Dkt. 61-2 at 21, 28; Dkt. 61-4.]  The Affidavit for Probable Cause summarized Officer Ahlersmeyer's interactions with Ms. Andrews and Ms. Hawkins on July 22, 2022, and set forth details of the August 9, 2022, meeting with Mr. Patel led by BNS.  [Dkt. 61-4.] On October 4, 2022, Detective Mastin emailed the MCPO screening prosecutor assigned to the case, Cathy McCallum, asking if she had an update on the case because "[w]e are getting significant pressure from the Chief's office and BNS to act on these hotels."  [Dkts. 61-2 at 21, 61-7 at 159.]

### E.  Mr. Patel is Charged with Intimidation

On October 19, 2022, Ms. McCallum, on behalf of the MCPO, filed an Information against Mr. Patel charging him with two counts of Intimidation:

**Count I**

On or about July 22, 2022, Kartik Patel, the owner of the Regal 8 Motel, did communicate a threat to Mindy Andrew, that is: that she must leave the hotel without a refund for the cost of her hotel room, with the intent that Mindy Andrew be placed in fear of retaliation for calling 911 for assistance, a prior lawful act;

**Count II**

On or about July 22, 2022, Kartik Patel did communicate a threat to Mindy Andrew, another person, that is: that she will be asked to leave the hotel without a refund for the cost of her hotel room if she calls 911 for assistance, with the intent that Mindy Andrew engage in conduct against her will by not calling 911 for assistance;

[Dkt. 56-5.] Mr. Patel was issued a summons to appear in court based on these charges, thus no arrest warrant was issued, and Mr. Patel was never arrested. [Dkt. 61-2 at 18.]

Ms. McCallum drafted and filed the Information against Mr. Patel without any drafting assistance from Detective Mastin. [*Id.*; Dkt. 56-2 at 50-51.] However, during her deposition, Detective Mastin acknowledged that, based on her review of the body camera footage, Mr. Patel was not at the Regal 8 on July 22, 2022, and that Mr. Patel did not tell Ms. Andrews that she must leave the hotel and without refund. [Dkt. 61-2 at 16.]

On August 25, 2023, the MCPO moved to dismiss the charges against Mr. Patel. [*Id.* at 18.] The motion was granted, and all charges against Mr. Patel were dismissed. [*Id.*]

### F.    BNS Denies Renewal of Budget 8's Hotel License

While charges against Mr. Patel were still pending, BNS denied Mr. Patel's application to renew his hotel license for his Budget 8 hotel on February 6, 2023. [Dkt. 61-5 at 1.] The denial letter was signed by Mr. Askew. [*Id.* at 2.] BNS's explanation for the denial relied on three factors:

- Mr. Patel failed to disclose in his application that he had been "arrested and charged for two (2) counts of intimidation";[1]

- the Budget 8 violated Indianapolis Code provisions by failing to maintain the premises in such a manner that it "will not create a nuisance or becomes inimical to the public welfare" and by failing to prevent illegal activity from taking place on the premises, as demonstrated by a letter from the Chief of IMPD supporting the denial of Budget 8's license;

- IMPD submitted a letter establishing that renewal of Budget 8's license would be "inimical to the public welfare" due to IMPD's concerns for public safety at Budget 8.

[*Id.* at 1.]

BNS immediately prohibited Budget 8 from furnishing rooms to new guests and ordered Budget 8 to cease operations within 60 days of the final decision. [*Id.*] Mr. Patel did not accept guests at the Budget 8 for five weeks following the revocation of his license, but ultimately BNS permitted him to accept guests while his appeal of the denial of his license renewal was pending. [Dkt. 61-9 at 2-3.]

Before initiating the instant action, Mr. Patel filed a separate case in this Court challenging the denial of Budget 8's hotel license renewal as a violation of his due process rights. *See Patel v. Consolidated City of Indianapolis*, No. 1:23-cv-1495-RLY-MKK. As discussed further below, the defendants in that case recently received summary judgment on all of Mr. Patel's claims.

---

[1] Notably, the application form only asked whether the applicant had "ever been arrested or convicted of a felony, misdemeanor, or ordinance violation," to which Mr. Patel responded "no." [Dkt. 61-8 at 3.] Based on the record evidence, Mr. Patel's answer appears correct in that he had not been "arrested or convicted" of the intimidation charges. In fact, Detective Mastin notified a City Prosecutor, Deborah Law—who was working on the letter in opposition to Budget 8's license renewal—that Mr. Patel was not arrested as a result of the intimidation charges since only a summons was issued. [Dkt. 61-7 at 43.]

## III. ANALYSIS

Mr. Patel's only claim against Officer Ahlersmeyer and Detective Mastin is one of malicious prosecution brought pursuant to 42 U.S.C. § 1983. [Dkt. 60 at 9-10.] Both Defendants assert that they are entitled to qualified immunity on Mr. Patel's claim. [Dkt. 57 at 25.] The Court will begin by setting forth the legal standards governing malicious prosecution claims. Next, the Court sets forth the Parties' arguments. Finally, because the Court ultimately determines that the Defendants in this case are entitled to qualified immunity, the Court's analysis begins and ends with that issue.

### A. Legal Standards for Malicious Prosecution Claims

The Supreme Court has recognized a Fourth Amendment claim under § 1983 for malicious prosecution.[2] *See Thompson v. Clark*, 596 U.S. 36, 39 (2022). A party asserting such a claim must establish the following three elements:

> (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused.

*Id.* at 43; *see Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025). Additionally, "[b]ecause this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." *Thompson*, 596 U.S. at 43 n.2.

Mr. Patel acknowledges he was not seized as a result of the charges against him, since a summons was issued in lieu of an arrest warranted and he was not detained. [Dkt. 60 at 10.] But

---

[2] In setting forth the necessary elements of a malicious prosecution claim, the Court notes with disappointment that neither Party cites the most recent legal standards governing such claims or discusses how recent developments in this area of the law impact the claims presented by Mr. Patel in this case. [*See* dkts. 57 at 17; 60 at 10, 16.]

12

he argues that this is not fatal to his claim.  Mr. Patel maintains that a malicious prosecution claim can be brought under the Due Process Clause, and he contends that his due process rights were violated when the intimidation charges "were used as the justification to deny renewal of his license to operate the Budget 8 hotel."  [*Id.* at 16.]

In *Thompson*, the United States Supreme Court acknowledged the argument "that the Due Process Clause could be an appropriate analytical home for a malicious prosecution claim under § 1983," and "[i]f so, the plaintiff presumably would not have to prove that he was seized as a result of the malicious prosecution."  596 U.S. at 43 n.2 (citation omitted).  But the Supreme Court had "no occasion to consider such an argument" in that case.  *Id.*  Given this language in *Thompson*, the Seventh Circuit Court of Appeals has noted that "[w]hether the Fourteenth Amendment's procedural due process component ensures a right to be free from malicious prosecution is an open question."  *Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022) (citing *Thompson*, 596 U.S. at 43 n.2); *see Ash v. City of Aurora*, 2026 WL 446968, *2 (7th Cir. 2026) ("[T]he Supreme Court has not yet decided whether a claim for malicious prosecution exists under the Due Process Clause."); *see also Neita*, 148 F.4th at 939 n.10.  In sum, whether Mr. Patel's claim—a § 1983 malicious prosecution claim under the Due Process Clause—is viable remains an open question.

## B.  The Parties' Arguments

Mr. Patel argues that Defendants both viewed Mr. Patel's Regal 8 hotel and his 9-1-1 policy as problematic, so they both took actions that would ultimately lead to charges being filed against Mr. Patel—Officer Ahlersmeyer by filing an incident report and emailing the head of the NAU encouraging action, and Detective Mastin by filing the probable cause affidavit and urging the MCPO to take action.  [Dkt. 60 at 11-12.]  Mr. Patel argues that Defendants did these things knowing that there was not probable cause that Mr. Patel committed any crime, let alone the

intimidation charges with which the MCPO ultimately charged him. [*Id.* at 14-15.] Mr. Patel argues that Officer Ahlersmeyer admitted a lack of probable cause on the day of the July 22, 2022, incident, and Detective Mastin made false statements in support of the charges. [*Id.*] Such a clear lack of probable cause, says Mr. Patel, also establishes malice. [*Id.* at 12-13.] Based on this evidence, Mr. Patel argues that the elements of a malicious prosecution claim are met—a lack of probable cause, malice, and the undisputed fact that the prosecution ended in his favor.

As noted above, Mr. Patel acknowledges that he was never arrested due to these charges, so he cannot establish a Fourth Amendment violation. But Mr. Patel argues that he need not establish an unconstitutional seizure under the Fourth Amendment, because his malicious prosecution claim is predicated on a violation of his due process rights. [*Id.* at 16.] Specifically, Mr. Patel argues that Defendants violated his due process rights by using the intimidation charges as a basis to deny the renewal of his hotel license for the Budget 8 hotel—a license that he has a property interest in and thus cannot be denied without due process. [*Id.* at 16-17.] In short, he maintains that "[b]oth BNS and IMPD were looking for an excuse to deny the Budget 8's hotel license," and Defendants "supplied it." [*Id.* at 17.]

In response, Defendants contend that summary judgment is appropriate for several independent reasons. Regarding the elements of a malicious prosecution claim, for example, they argue that Mr. Patel cannot establish that either Defendant acted with the requisite malice. [Dkt. 57 at 17, 19.] Additionally, Defendants also argue that they were not personally involved in the alleged violation of Mr. Patel's rights, since Ms. McCallum and MCPO pursued charges against Mr. Patel and BNS denied renewal of Mr. Patel's Budget 8 hotel license. [*Id.* at 20-25; Dkt. 66 at 4-6.] Finally, Defendants argue that Mr. Patel cannot establish a due process violation because he

14

does not have a constitutionally protected property interest in the Budget 8 hotel license, as renewal of that license is a decision within the discretion of BNS.  [Dkt. 66 at 6-7.]

Certain of Defendants' arguments regarding the elements of a malicious prosecution claim and the lack of Defendants' personal involvement appear persuasive, particularly with respect to Officer Ahlersmeyer.[3]  Moreover, Defendants' argument that Mr. Patel cannot establish a violation of his due process rights based on BNS's failure to renew his Budget 8 hotel license because he does not have a protected property interest in that license also appears to be correct.  Specifically, Mr. Patel recently lost the other case he was pursuing in this District on summary judgment on what would also be an independent basis to grant Defendants summary judgment in this case.  *See Patel v. Consolidated City of Indianapolis*, No. 1:23-cv-1495-RLY-MKK, dkt. 186 at 15 (holding that Mr. Patel "had no property interest in his hotel operating license or the renewal of that license").  The Court need not discuss these or the Parties' other arguments in detail, however, because it ultimately determines that Defendants in this case are entitled to qualified immunity.

### C.    Defendants Are Entitled to Qualified Immunity

State actors are "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (citation and internal quotation marks omitted).  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what

---

[3] With respect to Officer Ahlersmeyer, a review of his body camera footage shows that he simply responded to a dispatch at the Regal 8, expressed his concerns over the legality of the posted sign to Mr. Patel and Ms. Hopkins, asked his supervisor how to proceed, and, instead of arresting anyone, filed an incident report.  Officer Ahlersmeyer had no other meaningful involvement in the charges that were ultimately filed against Mr. Patel, let alone BNS's licensing renewal decision.  Based on this evidence, it is difficult to see how Officer Ahlersmeyer acted with malice or was personally involved in the alleged due process violation at issue in this case.

he is doing is unlawful." *Id.* at 63 (citation and internal quotation marks omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and internal quotation marks omitted). The Seventh Circuit Court of Appeals has explained that a right is clearly established when:

(1) a closely analogous case finds the alleged violation unlawful[;]

(2) the relevant caselaw shows such a clear trend that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time[;] or

(3) in rare cases, the defendant's conduct was so egregious and unreasonable that no reasonable official could have thought he was acting lawfully.

*Johnson v. Edwards*, 164 F.4th 1074, 1079 (7th Cir. 2026) (alterations in original) (citation and quotation marks omitted). "The Supreme Court has [instructed courts] many times to look for rights 'defined with specificity[;]' rights defined only at 'a high level of generality' are not clearly established for the purposes of qualified immunity." *Id.* (quoting *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019)).

The Court may decide the two qualified-immunity showings in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Importantly, the plaintiff bears the burden of proving the law is clearly established—not the defendant." *Villalobos v. Picicco*, --- F.4th ----, 2026 WL 632209, *4 (7th Cir. 2026). "If a plaintiff fails to identify analogous precedent clearly establishing the law, the district court must grant summary judgment for the defendant." *Id.*; *see Neita*, 148 F.4th at 931 ("Plaintiffs can meet th[eir] burden by presenting a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand.").

In this case, the Court focuses its qualified-immunity analysis on the second necessary showing—whether the alleged constitutional violation was clearly established. Mr. Patel almost

16

concedes that he cannot make the requisite showing on this point.  He states that he "knows of no closely analogous case where a business owner was arrested for intimidation or a similar charge for posting a sign discouraging customers from calling 9-1-1." [Dkt. 60 at 18.]  However, he then argues that "the essence of the due process violation in this case is that Defendants procured the prosecution by falsely stating that [Mr.] Patel threatened to evict [Ms. Andrews] or to fine her $50 when he did neither of these things."  [*Id.*]  "In other words," Mr. Patel continues, "Defendants procured this prosecution through false or fabricated evidence."  [*Id.*]  Mr. Patel points to a single case in support of his proposition—*Olson v. Champaign County, Ill.*, 784 F.3d 1093 (7th Cir. 2015)—which he says clearly establishes "[t]he right to be free of prosecution based on false statements made by policemen to prosecutors."  [*Id.*]

Defendants argue that Mr. Patel gives the right established in *Olson* "far too broad a reading." [Dkt. 66 at 8.]  They argue that "*Olson* is not comparable to this case because it involved a claim of malicious prosecution and false arrest based on a Fourth Amendment seizure (a custodial arrest), allegedly obtained through knowingly false statement by two detectives to a prosecutor." [*Id.*]  Defendants emphasize that "[t]he Seventh Circuit has drawn a clear distinction between claims that officer made false statements to procure an arrest, which implicate the Fourth Amendment, and claims involving a summons for charges lacking probable cause, which do not." [*Id.* at 8-9.]

The Court agrees with Defendants that Mr. Patel has not carried his burden of showing that the alleged violation of his rights was clearly established.  Mr. Patel acknowledges he does not know of a factually analogous case.  He therefore attempts to rely on *Olson* as establishing the right to be free from prosecution based on false statement by police officers.  In *Olson*, however, the plaintiff alleged that two detectives violated his Fourth Amendment rights by arresting him

17

without probable cause. 784 F.3d at 1099. The Seventh Circuit acknowledged that it was clearly established that it violates the Fourth Amendment for officers to intentionally or recklessly provide false information to obtain an arrest warrant. *Id.* at 1100. The Seventh Circuit reversed the district court's dismissal under Rule 12(b)(6), reasoning that "[t]he plaintiffs' allegations allow a reasonable inference that [the detectives] provided false information to obtain the warrant and so are not entitled to qualified immunity." *Id.* at 1100.

The problem with Mr. Patel's reliance on *Olson* is that the Seventh Circuit has repeatedly cautioned not to "define[] the inquiry too broadly" when determining whether a right is clearly established. *Johnson*, 164 F.4th at 1083. Instead, it is important to assess whether a plaintiff "had a clearly established right to be free from the *specific* conduct at issue." *Id.* (emphasis added). Mr. Patel focuses on Defendants' alleged false statements in support of the intimidation charges when defining the clearly established right, but in doing so, he entirely ignores the constitutional violation he alleges—the denial of due process when his Budget 8 hotel license was not renewed. When the alleged constitutional violation is included, the specific allegedly unconstitutional conduct at issue here is making false statements in support of criminal charges against the plaintiff that were then used as justification (by a separate city agency) to deny renewal of the plaintiff's business license without due process. Mr. Patel's reliance on *Olson* falls well short of showing that he had a clearly established right to be free from this specific conduct. For starters, as outlined above, it is an open question whether there is a cognizable § 1983 malicious prosecution claim under the Due Process Clause at all. *See Thompson*, 596 U.S. at 43 n.2; *Jones*, 34 F.4th at 564 n.8. This alone confirms that the right on which Mr. Patel relies is not clearly established.

Even if there is such a right, the specific conduct at issue in *Olson* is substantially different than Defendants' conduct here. *Olson* involved an alleged Fourth Amendment violation for false

18

statements supporting an arrest. This case involves an alleged due process violation for false statements in support of charges that were then used by a separate government unit to deny the renewal of a business license. Simply put, Mr. Patel has not pointed the Court to anything close to an analogous case that clearly establishes that Defendants' conduct violated his due process rights.

Ultimately, it is Mr. Patel's burden to present "a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand." *Neita*, 148 F.4th at 931. Mr. Patel's sole reliance on *Olson* fails to do this. And when "a plaintiff fails to identify analogous precedent clearly establishing the law, the district court must grant summary judgment for the defendant[s]" because they are entitled to qualified immunity. *Villalobos*, --- F.4th ----, 2026 WL 632209, at *4. Thus, for these reasons, the Court must grant summary judgment to Defendants in this case.

### IV. CONCLUSION

For the reasons stated herein, Defendants Officer Ahlersmeyer and Detective Mastin are entitled to qualified immunity on Mr. Patel's § 1983 malicious prosecution claim. Their Motion for Summary Judgment is therefore **GRANTED**. [Dkt. 56.] Final judgment shall enter accordingly.

**SO ORDERED.**

Date: 3/23/2026

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

19